# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

GLEN GARDNER,

              Petitioner,

    v.

D.L. RUNNELS, et al.,

              Respondent.

1:02-cv-05523-TAG HC

ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Doc. 13)

ORDERING DIRECTING CLERK OF COURT TO ENTER JUDGMENT

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

_____Petitioner is currently incarcerated at High Desert State Prison, Susanville, California, serving a sentence of eight years for possession of a controlled substance in prison (Cal. Pen. Code § 4573.6).  (CT 106.)  Petitioner pleaded guilty to the charge and admitted a prior "strike" conviction within the meaning of California Penal Code section 1170.12 ("Three Strikes law").  (Doc. 28, Exh. B, p. 2).  The sentence imposed on June 27, 2000, by the Superior Court of California, County of Kings ("Superior Court"), consisted of an aggravated term of four years for the drug conviction, which was then doubled because of the prior "strike," for a total sentence of eight years.  (CT 106; Doc. 28, Exh. B, p. 2).

1    Petitioner timely filed a notice of appeal from the judgment of conviction.  (CT 108.)

2    Pursuant to <u>People v. Wende</u>, 25 Cal.3d 436 (1979), Petitioner's appellate attorney filed a brief in

3    the California Court of Appeal, Fifth Appellate District ("5th DCA"), indicating that she could find

4    no arguable issues on appeal and requesting the 5th DCA to independently review the record for

5    error.  (Doc. 28, Exh. A).  In an unpublished opinion, the 5th DCA affirmed the judgment of

6    conviction and sentence on September 20, 2001.  (Doc. 28, Exh. B).  In that opinion, the 5th DCA

7    indicated that, following its own independent review of the record, it agreed with Petitioner's

8    appellate counsel that "no reasonably arguable factual or legal issues exist."  (<u>Id</u>. at p. 2).  Petitioner

9    did not file a petition for review in the California Supreme Court.

10    On February 13, 2001, Petitioner filed a petition for writ of habeas corpus in the Superior

11    Court.  (Doc. 28, Exhs. C).  That petition was denied on February 15, 2001.  (Doc. 28, Exhs. D).

12    Subsequently, Petitioner filed two other habeas petitions in the Superior Court on May 29, 2001, and

13    May 2, 2003.  (Doc. 28, Exhs. E, G).  Those petitions were denied, respectively, on June 1, 2001,

14    and May 8, 2003.  (Doc. 28, Exhs. F, H).

15    On October 4, 2001, Petitioner filed a habeas petition in the 5th DCA (Doc. 28, Exhs. I); this

16    petition was denied on October 11, 2001.  (Doc. 28, Exhs. J).  On December 3, 2001, Petitioner filed

17    a habeas petition in the California Supreme Court.  (Doc. 28, Exhs. K).  The California Supreme

18    Court denied the petition on March 27, 2002.  (Doc. 28, Exhs. L).  In his answer, Respondent

19    concedes that Petitioner has exhausted the three claims currently in his amended petition.  (Doc. 28,

20    p. 2).

21    Petitioner filed the original federal habeas corpus petition on May 1, 2002. (Doc. 1.)  On July

22    26, 2002, Petitioner filed the amended petition that is the operable pleading in the present

23    proceeding.  (Doc. 13).  Following consent by all parties to magistrate jurisdiction, the District Judge

24    ordered that the case be transferred to the Magistrate Judge for all purposes on June 8, 2004.  (Doc.

25    42).

26    ///

27    ///

28

2

# FACTUAL BACKGROUND[1]

On May 10, 1999, Debbie Hill, a California Department of Corrections ("CDC") correctional officer at the California State Prison in Corcoran, California, was called by another correctional officer, Timothy Poe, to be present for a search being conducted on Petitioner by a third correctional officer, Michael Martinez. (CT 15-16). When Hill arrived, Martinez was conducting a clothed-body search of Petitioner in the prison exercise yard. (CT 17-18). After Martinez completed the initial pat-down of Petitioner, Hill was "uncomfortable" because Petitioner seemed "extremely nervous" and "desperate" to leave the yard. (CT 19). Hill ordered Petitioner to give her his pants, which the officer then searched, finally discovering a plastic bag of what she suspected was "black tar heroin" in one pocket. (CT 19-20). Hill placed Petitioner in mechanical restraints and took him to an office where a correctional officer, Ryan Reed, performed a field test on the substance found in Petitioner's pocket. (CT 21, 23).

Reed contacted Aurelio Ramirez, a laboratory technician at the California Department of Justice, who received the suspected heroin taken from Petitioner. (CT 50-53). Ramirez performed two "presumptive" tests that were positive for the presence of opiates and a third test that was positive for heroin. (CT 53-54). Ramirez indicated that the substance weighed .02 grams. (CT 55). Ramirez opined that this was a "usable quantity" of black tar heroin. (Id.).[2]

# DISCUSSION

## I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kings

---

[1]The information contained in this section was taken from the testimony offered at the preliminary hearing on February 10, 2000. (CT 10-60).

[2]At the entry of his guilty plea, Petitioner confirmed the crucial facts by admitting that while he was incarcerated at Corcoran State Prison, employees found a usable amount of heroin in Petitioner's trousers. (CT 97-98).

County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The original petition was filed on May 1, 2002, after the enactment of the AEDPA, and is therefore governed by its provisions.

**II.  Legal Standard of Review**

Under the AEDPA, a state court's decision denying relief may be reversed only if that decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); Van Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000), *overruled on other grounds by* Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166 (2003).

**A.  Review of State Court Questions of Law**

Challenges to purely legal questions resolved by the state court are reviewed under 28 U.S.C. § 2254(d)(1). "The question on review is (a) whether the state court's decision contradicts a holding of the United States Supreme Court; or (b) whether the state court, after identifying the correct governing Supreme Court holding, then unreasonably applied that principle to the facts of the prisoner's case. " Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004).

The AEDPA denies habeas relief on any claim adjudicated on the merits in state court unless the state court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. § 2254(d)(1)'s reference to "clearly established Federal law" means the holdings (not dicta) of the Supreme Court's decisions, at the time of the state court's decision. Lockyer, 538 U.S. at 412.  "A

state court's decision is 'contrary to' clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases *or* if the state court confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court and, nevertheless, arrives at a result different from its precedent." <u>Lambert</u>, 393 F.3d at 974 (citing <u>Lockyer</u>, 538 U.S. at 73, 123 S.Ct. 1166 (citing <u>Bell v. Cone</u>, 535 U.S. 685, 694, 122 S.Ct. 1843 (2002); <u>Williams</u>, 529 U.S. at 405-06, 120 S.Ct. 1495)).  "The 'unreasonable application' standard captures those cases in which 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" <u>Id.</u>, quoting <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. 1495 (2000).  The Supreme Court instructs that in applying the "unreasonable application" standard, a federal habeas court should ask whether the state court's application of clearly established federal law was objectively unreasonable.  <u>Id.</u> at 413, 120 S.Ct. 1495.  Thus, a habeas writ cannot issue if the federal habeas court in its own judgment concludes that the state court decision applied clearly established federal law incorrectly;  the application  must also have been objectively unreasonable.  <u>Lambert</u>, 393 F.3d at 975.

## B.   Review of State Court Questions of Fact

Federal habeas challenges to purely factual questions determined by the state courts are reviewed under 28 U.S.C. §§ 2254(d)(2).  "[T]he question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record. [F]act-based challenges founded on evidence raised for the first time in federal court are reviewed under § 2254(e)(1); the question on review is whether the new evidence amounts to clear and convincing proof sufficient to overcome the presumption of correctness given the state court's factual findings." <u>Lambert</u>, 393 F.3d at 978.  Thus, under the AEDPA, state court factual determinations are presumed correct in the absence of  clear and convincing evidence to the contrary. In addition, state court decisions which are adjudicated on the merits and based on factual determinations will not be overturned on habeas review under the AEDPA unless the decisions were objectively unreasonable in light of the evidence presented in the state court proceedings. <u>Lockyer</u>, 538 U.S. at 75.

1    The Ninth Circuit Court of Appeals recently interpreted §§ 2254(d)(2) and 2254(e)(1)[3], and

2    held both provisions apply to challenges supported by separate categories of evidence. Taylor v.

3    Maddox, 366 F.3d 992, 1000 (9th Cir. 2004); Lambert, 393 F.3d at 971-973.  In Taylor, the Ninth

4    Circuit held that the "unreasonable determination" clause of § 2254(d)(2) applies to intrinsic review

5    of a state court's process, i.e., circumstances in which a petitioner challenges the state court's

6    findings based entirely on the state court record. Taylor, 366 F.3d at 999-1000.  In Taylor, the Ninth

7    Circuit also held that § 2254(e)(1) applies to challenges based on extrinsic evidence, i.e., evidence

8    presented for the first time in federal court. Id.  As explained in Taylor: "[I]t is not enough that we

9    would reverse in similar circumstances if this were an appeal from a district court decision; rather,

10   we must be convinced that an appellate panel, applying the normal standards of appellate review,

11   could not reasonably conclude that the finding is supported by the record." Id. (citations omitted).

12   Likewise, mere doubt as to the adequacy of the state court's findings of fact is insufficient; "we must

13   be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is

14   pointed out would be unreasonable in holding that the state court's fact-finding process was

15   adequate. Id.; Lambert, 393 F.3d at 972.

16   ///

---

18   [3]  §§ 2254(d)(2) and 2254(e)(1) address whether, and to what extent, a federal district court is

19   bound by state court findings on any of the dispositive factual questions presented in a federal habeas
     petition.  These statutes provide as follows:

20        (d) An application for a writ of habeas corpus on behalf of a person in
21        custody pursuant to the judgment of a State court shall not be granted
          with respect to any claim that was adjudicated on the merits in State court
22        proceedings unless the adjudication of the claim --

23        . . .

24        (2) resulted in a decision that was based on an unreasonable determination
          of the facts in light of the evidence presented in the State court proceeding.
25

26        (e)(1) In a proceeding instituted by an application for a writ of habeas corpus
          by a person in custody pursuant to the judgment of a State court, a
27        determination of a factual issue made by a State court shall be presumed to
          be correct.  The applicant shall have the burden of rebutting the presumption
28        by clear and convincing evidence.

1    When a habeas petition presents no intrinsic challenge to a state court's factual findings, or if

2    it does, the factual findings survive an intrinsic review, the "state court's factual conclusions are then

3    'dressed in a presumption of correctness, which [   ] helps steel them against any challenge based on

4    extrinsic evidence.'" Lambert, 393 F.3d at 972 (citing Taylor v. Maddox, 366 F.3d at 999-1000).

5    State court factual  findings "may be over-turned based on new evidence presented for the first time

6    in federal court only if such new evidence amounts to clear and convincing proof that the state-court

7    finding is in error." Id.

8    **C.   Review of State Court Mixed Questions of Law and Fact**

9    A mixed question of law and fact is one that requires the application of legal principles to

10   historical and other facts. Section 2254(e)(1)'s presumption of correctness is restricted to pure

11   questions of historical fact. Lambert, 393 F.3d at 976.  "State decisions applying law to facts are

12   governed by § 2254(d)(1); however, factual findings underlying the state court's conclusions on the

13   mixed issue are accorded a presumption of correctness." Id., citing Jeffries v. Wood. 114 F.3d at

14   1498 (AEDPA "further restricts the scope of federal review of mixed questions of law and fact. De

15   novo review is no longer appropriate; deference to the state court factual findings is."), further citing

16   Rupe v. Wood, 93 F.3d 1434, 1444 (9th Cir. 1997) (voluntariness of confession is a legal question not

17   entitled to presumption of correctness but the state court's finding that no threats or promises were

18   made was "essentially a factual conclusion, which is entitled to a presumption of correctness").

19   A federal court reviewing a state court decision based on a mixed question of law and fact

20   must "first separate the legal conclusions from the factual determinations that underlies it. Fact-

21   finding underlying the state court's decision is accorded the full deference of §§ 2254(d)(2) and

22   (e)(1), while the state court's conclusion as to the ultimate legal issue–or the application of federal

23   law to the factual findings–is reviewed per § 2254 (d)(1) in order to ascertain whether the decision is

24   'contrary to, or involved an unreasonable application of, clearly established' Supreme Court

25   precedent." Lambert, 393 F.3d at 977-978.

26   ///

27   ///

28

**III.  Review of Petitioner's Claims**

The amended petition raises the following remaining grounds for relief:

**Ground One**: "False Imprisonment-Cruel & Unusual Punishment–Petitioner was Denied Six [sic], Fourteenth Amendment Due Process...Petitioner's original parole release date of 3-18-2000 was illegally extended on 3-17-2000 which Corcoran prison added 150 days for a CDC 115 pending disposition hearing.  Prior to a hearing for a division B offense which convened on 4-30-2000 with no time loss.  The charges in complaint should have been dismissed due to staff failed to meet time constraints at all stages of disciplinary proceedings.  Kings County was in fact notified that Petitioner was ready to transport to County Jail and was not.  Petitioner remained in prison an additional 42 days once closure of disciplinary hearing terminated on 4-30-2000 'till 6-9-2000 and was denied bail as ordered by Court.  Reversal is required."

**Ground Two**: "Ineffective Assistance of Counsel–Due process–Violation Fourteenth Amendment...Petitioner was denied an expert witness as ordered by the Court.  Petitioner's attorney did not file motions for discovery, to suppress the evidence, to dismiss as requested by Petitioner.  Petitioner's attorney did not challenge the fact that the .02[grams] substance had been tested on three separate occasions.  Also attorney did not challenge the fact the no new additional evidence was presented to the D.A. thereafter 7-12-99 other than the same set of evidence once presented and denied on 7-12-99.  Petitioner's attorney also knew Petitioner was being illegally unlawfully false imprisonment and was denied the right to make bail and did not move to resolve these matters."

**Ground Three**: "Untimely arraignment–violation Fourteenth Amendment Due Process...Petitioner contends that 258 days from date of misconduct on 5-10-99 and 195 days later from date of prosecution denial on 7-12-99 was an unreasonable amount of time that had elapsed before Petitioner was charged and brought forth to face accusers on 1-24-2000.  Petitioner contends that once prosecution was declined, this matter should have been resolved at the administrative level and was not, because of the fact the District Attorney learned Petitioner was a 3rd strike candidate and changed his position to prosecute, as he state on 7-12-99, "Conviction is not likely" declining prosecution.  The charges in the complaint should have been dismissed.  These constraints were not met."

**A. Ground One: Petitioner was held illegally beyond his original parole release date**

Petitioner contends that CDC officials at Corcoran State Prison illegally extended his parole release date by 150 days in violation of federal due process and Eighth Amendment protections.  Petitioner contends that as a result of this erroneous decision, he remained incarcerated for an additional 42 days.  (Doc. 13).

**1. Factual Background**

On May 10, 1999, correctional officers conducting a search of Petitioner discovered .02 grams of heroin in the right front pocket in his trousers.  (CT 18-20; 55; Doc. 13, Exhs. A, pp. 5-6).  On July 12, 1999, prison officials issued a Rules Violation Report, CDC Form 115 ("CDC-115"), which was given to Petitioner.  (Doc. 13, Exhs. A).  On that same date, Petitioner requested

postponement of any hearing "pending outcome of referral for prosecution." (Doc. 13, Exhs. A, p. 4). Also on July 12, 1999, CDC received written notice from the Kings County District Attorney's office that "prosecution of this matter was being declined" because "there was no reasonable likelihood of conviction." (Doc. 13, Exhs. A, p. 3).

Subsequently, the Kings County District Attorney changed his mind regarding prosecution and filed charges against Petitioner on January 12, 2000. (CT 3). Petitioner was arraigned on January 28, 2000 (Doc. 13, Exhs. B), and a preliminary hearing was held on February 10, 2000, at the conclusion of which the Superior Court ordered the matter bound over for trial. (CT 10, 58).

On March 17, 2000, the day before the CDC was scheduled to release Petitioner on parole, Petitioner was notified that, pursuant to 15 Cal. Code of Regulations § 3323, he was being "retained in custody pending disposition of CDC-115 of 5-10-99" and that his actual parole date may be extended by up to 150 days until August 15, 2000. (Doc. 13, Exhs. D). On April 7, 2000, Petitioner appealed the March 17, 2000 decision. (Doc. 13, Exhs. E). In that appeal, Petitioner argued that he should be released as previously scheduled and then summoned to appear in the Superior Court on the possession of heroin charge when the Superior Court so ordered. (Id.).

On April 30, 2000, CDC officials conducted the hearing regarding the CDC-115 violation that occurred on May 10, 1999. (Doc. 13, Exhs. A). Petitioner acknowledged that he had received a copy of the charges at least twenty-four hours before the hearing. (Id.). Petitioner chose not to present any witnesses, while the prison presented, inter alia, the report of Officer Hill and the forensics report on the tests for heroin. (Id.). At the conclusion, the hearing officer found Petitioner guilty of the charge; however, because Petitioner had been given a copy of the CDC-115 more than fifteen days after the incident and because the hearing had not been conducted within thirty days of service of the CDC-115, the hearing officer concluded that "no forfeiture of credit could be assessed." (Id. at p. 2).

On June 8, 2000, a correctional counselor at Corcoran State Prison interviewed Petitioner regarding his appeal and, on June 9, 2000, the associate warden of the prison issued a "first level response" to Petitioner's appeal in which the associate warden indicated that because the senior hearing officer at the April 30, 2000 hearing did not "assess a forfeiture of credit due to procedure

9

error related to hearing timing, the administrative extension [of Petitioner's parole by 150 days to August 15, 2000] was not in agreement with the actual credit loss.  I believe that you are may [sic] be overdue for parole and this information was related to the Correctional Case Records Supervisor...." (Doc. 13, Exhs. E, pp. 5-6).  The associate warden, however, also advised Petitioner that since the district attorney had accepted the case for prosecution, Petitioner "may be released to the custody of the County Sheriff, or other appropriate police agency."  (Id.).

On the same day, June 9, 2000, an order for the release and transportation of Petitioner to the custody of the Kings County Sheriff was issued by the Superior Court in charge of the criminal prosecution.  (CT 86).  Petitioner appeared in Superior Court on June 13, 2000, but no resolution of the charge took place.  (CT 88)  On June 27, 2000, Petitioner appeared once again in Superior Court to withdraw his not guilty plea and enter a guilty plea pursuant to the plea agreement referred to in the Statement of Facts.  (CT 88-104).  Petitioner's sentence of eight years, with credit for time served commencing June 9, 2000, was imposed at that hearing.  (Id.).

## 2.  Ground One Is Moot

Initially, Respondent argues that Ground One is moot because Petitioner is challenging the postponement of parole on a sentence for which Petitioner is not presently incarcerated.  (Doc. 28, p. 11).  The Court agrees that Ground One is moot.

"The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.' "  Maleng v. Cook, 490 U.S. 488, 490, 109 S.Ct. 1923, 1925 (1989) (per curiam) (quoting 28 U.S.C. § 2241(c)(3)); see 28 U.S.C. § 2254(a).  A habeas petitioner must be in custody "at the time his petition is filed," or the court is without jurisdiction to hear his petition.  Maleng, 490 U.S. at 490, 109 S. Ct. 1925.

The U.S. Supreme Court has not taken a literal view of the "in custody" requirement, observing that "besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus."  Jones v. Cunningham, 371 U.S. 236, 240, 83 S.Ct. 373, 376 (1963) (holding that persons released from incarceration on parole are "in custody" under 28

10

U.S.C. § 2241); <u>see also</u> <u>Gordon v. Duran</u>, 895 F.2d 610, 612 (9th Cir. 1990).  Thus, if the petition were filed while Petitioner was "in custody," Petitioner's subsequent release would not necessarily deprive the court of subject matter jurisdiction nor would it render the petition moot.  <u>Carafas v. La Valle</u>, 391 U.S. 234, 238, 88 S.Ct. 1556, 1559-60 (1968).

An action is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>Leonard v. Hammond</u>, 804 F.2d 838, 842 (4th Cir.1986) (citations and internal quotations omitted).  The sole remedy in habeas corpus review of state court convictions is the invalidation of the conviction that placed the petitioner in custody.  "Nullification of a conviction may have important benefits for a defendant . . . but urging in a habeas proceeding the correction of a sentence already served is another matter." <u>North Carolina v. Rice</u>, 404 U.S. 244, 248, 92 S.Ct. 402, 405 (1971).  As the Supreme Court noted, "[c]ollateral review of a final judgment is not an endeavor to be undertaken lightly.  It is not warranted absent a showing that the complainant suffers actual harm from the judgment that he seeks to avoid." <u>Lane v. Williams</u>, 455 U.S. 624, 632, 102 S.Ct. 1322, 1328 n.13 (1982).

Here, the record indicates that Petitioner was scheduled to be paroled on March 18, 2000, but that on March 17, 2000, CDC officials extended his parole for up to 150 days pursuant to 15 Cal. Code of Regulations, § 3323(k), which provides that any postponement of parole due to an administrative hearing must, under certain circumstances, be restored to the inmate by a commensurate reduction in the inmate's parole period.  On April 30, 2000, the hearing was held.  At his criminal sentencing on June 27, 2000, the court gave Petitioner credit for time served on that offense from June 9, 2000, the date he was transferred from Corcoran State Prison to the Kings County jail.  Moreover, Corcoran State Prison's associate warden indicated that as of June 9, 2000, Petitioner was in a position to be transferred out of CDC's custody and into the custody of the Kings County Sheriff for prosecution.

Accordingly, it appears that as of June 9, 2000, Petitioner had completed his sentence on the prior conviction.  He apparently concedes this point in Ground One, arguing that the unlawful delay

and imprisonment was limited to the time period of April 30, 2000 to June 9, 2000.[4]  Thus, Petitioner is *only* challenging the failure of prison officials to start his parole on the prior offense as of April 30, 2000, and his continued incarceration, instead of parole, until June 9, 2000.  As of the latter date, Petitioner was no longer serving a sentence on his prior conviction since he had been released from CDC custody and, by virtue of the custody credits awarded at the June 27, 2000 sentencing hearing, he had begun serving his new sentence on the current conviction for possession of heroin.

Petitioner filed the original petition in this case on May 1, 2002.  (Doc. 1).  At that point, almost two years had elapsed since Petitioner had completed his sentence on the prior conviction.  Thus, no active case or controversy exists with regard to that sentence.  See Nonette v. Small, 316 F.3d 872, 876 (9th Cir. 2002) (habeas claim regarding loss of good-time credits at prison disciplinary hearing is moot and must be dismissed as lacking case or controversy because petitioner had already fully served the period of incarceration he is attacking).   Accordingly, a habeas claim based upon the allegedly erroneous execution of that earlier sentence is moot.

Ground One is also moot because the Court cannot grant Petitioner any relief.  Picrin-Peron v. Rison, 930 F.2d 773, 776 (9th Cir. 1991)(a claim is moot when the court no longer has power to grant the requested relief; see also Sample v. Johnson, 771 F.2d 711, 713 (9th Cir. 1985) (a case is moot where the issues are no longer live or the parties lack a legally cognizable interest in the outcome, and when a court's decision will no longer have an impact.).  Since Petitioner is no longer serving time for the prior offense, and since he does not seek the overturning of his prior conviction, the Court cannot grant Petitioner any relief on this claim.  Hence, for this reason as well, Ground One is moot.

**3.  <u>Ground One Must Be Denied On Its Merits</u>**

However, even were Ground One not moot, it must be denied on its merits.  Because Ground One intertwines due process considerations regarding the administrative hearing on the CDC-115 violation and the CDC's decision to invoke the provisions of §3323 (k) of  Title 15 of the California Code of Regulations to delay Petitioner's scheduled parole, the Court will analyze both of these

---

[4]Although Petitioner refers to this as a 42-day period, the Court calculates it as a 40-day period.

1    actions from a due process standpoint.[5]

2                          **a.  The April 30, 2000 Administrative Hearing**

3            Federal habeas corpus relief is only available for violations of the United States Constitution.

4    28 U.S.C. §§ 2254(a),(d).  Federal habeas relief is not available to correct alleged errors in the state

5    court's application or interpretation of state law.  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct.

6    475, 480 (1991).   Ground One concerns allegations surrounding Petitioner's prison disciplinary

7    hearing and its effect on his release on parole.  A prisoner's good time credits cannot be revoked at a

8    prison disciplinary hearing without due process.  See Massachusetts Correctional Institute v. Hill, 472

9    U.S. 445, 447, 105 S.Ct. 2768, 2770 (1985).  However, a prison disciplinary hearing is not a criminal

10   prosecution, and the due process protections at a prison disciplinary proceeding are less than in a

11   criminal prosecution.  Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195  (1985); Wolff v.

12   McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974); Walker v. Sumner, 14 F.3d 1415, 1419

13   (9th Cir. 1993).

14          When a prison disciplinary hearing may result in the loss of earned time credits dues process

15   requires that the prisoner receive: (1) advanced written notice of the disciplinary charges at least 24

16   hours before the hearing takes place; (2) an opportunity, when consistent with institutional safety and

17   correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a

18   written statement by the fact finder of the evidence relied on and the reasons for the disciplinary

19   action.  See Wolff, 418 U.S. at 563-567, 94 S.Ct. at 2978-80; Zimmerlee v. Keeney, 831 F.2d 183,

20   186 (9th Cir. 1987).

21          Here, as discussed previously, Petitioner was given at least 24 hours notice of the CDC-115

22   charge.  Petitioner was provided with, but declined, an opportunity to present evidence in his own

23   behalf; and he received a written decision from the hearing officer at the conclusion of the hearing.

24

25   _____

26          [5]Although Petitioner contends that the delay in parole implicated not only due process concerns, but also the Sixth
     and Eighth Amendments, the Court ascertains no actual or potential federal violation derived from these constitutional
27   provisions.  (Doc. 13, p. 6).   Petitioner's contention that he was "falsely imprisoned" (id.), does not fall within the ambit of
     the Eighth Amendment. Nor does Petitioner's claim of a 42 day delay in parole state a claim based on "excessive punishment"
28   under the Eighth Amendment.  The Court sees no logical connection between Ground One and the Eighth Amendment.
     Accordingly, the Court analyzes Petitioner's Ground One solely as a due process claim.

                                                        13

Petitioner does not challenge the "guilty" finding at the conclusion of the hearing or the hearing

officer's disposition, i.e., his decision not to impose a forfeiture of Petitioner's credits.

In sum, Petitioner was given adequate due process.  See Wolff, 418 U.S. at 563-567, 94 S.Ct.

at 2978-80.  Thus, to the extent that Ground One makes a due process argument regarding the

administrative hearing itself, the state court's rejection of this ground was not contrary to nor an

unreasonable interpretation of clearly established federal law.

### b. The Postponement of Petitioner's Parole Date

The Fourteenth Amendment provides that "[no] State [shall] deprive any person of life,

liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  In certain cases, a

state law may create a liberty interest protected by the Constitution.  In examining questions of

procedural due process, federal courts employ a two-step inquiry: (1) whether there exists a liberty or

property interest which has been interfered with by the State, Board of Regents of State Colleges v.

Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06 (1972); and (2) whether the procedures attendant

upon that deprivation were constitutionally sufficient.  Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct.

864 (1983), *receded from and rejected on separate grounds*, Sandin v. Conner, 515 U.S. 472, 115

S.Ct. 2293 (1995).  See Kentucky Dept. Of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct.

1904 (1989).

Thus, the first question the Court must answer is whether, within a state's grant, denial, or

postponement of parole, there exists a liberty interest protected by the Due Process Clause.  The

United States Supreme Court has answered this question in the negative: "There is no constitutional

or inherent right of a convicted person to be conditionally released before the expiration of a valid

sentence."  Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7, 99

S.Ct. 2100 (1979); accord Bergen v. Spaulding, 881 F.2d 719, 721 (9th Cir.1989).  "Nevertheless,

early release statutes can create a 'liberty interest protected by due process guarantees.'"  Bermudez v.

Duenas, 936 F.2d 1064, 1067 (9th Cir.1991) (per curiam) (quoting Greenholtz, 442 U.S. at 12, 99

S.Ct. at 2106); Board of Pardons v. Allen, 482 U.S. 369, 373, 107 S.Ct. 2415, 2418 (1987).

Moreover, "[a] state may create a constitutionally protected liberty interest by establishing regulatory

measures that impose substantive limitations on the exercise of official discretion."  Bermudez, 936

14

1   F.2d at 1067, citing Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir.1985).

2       However, no protected entitlement to release exists unless a state scheme includes a formula

3   which mandates release after the occurrence of specified events.  Baumann, 754 F.2d at 844 (stating

4   that the unique "shall/unless" formula was decisive in Greenholtz).  If there exists mandatory

5   language in a parole statute, then Petitioner has a protected liberty interest in parole release.

6   Greenholtz, 442 U.S. at 11-12, 99 S.Ct. 2105-06.  If, however, the state merely holds out the

7   possibility of parole, then such a hope is not protected by due process.  Greenholtz, 442 U.S. at 11, 99

8   S.Ct. at 2105; Baumann, 754 F.2d at 844. Therefore, a review of the language contained within the

9   California parole statutes is necessary to determine whether a liberty interest is created.

10       The relevant California statutory language is contained in California  Penal Code § 3000(a)(1),

11   which provides in pertinent part that "[a] sentence pursuant to [the determinate sentencing law] shall

12   include a period of parole, unless waived, as provided in this section."   Under California's

13   Determinate Sentencing Law, the Legislature, in § 3000(b)(1), has decreed that "[a]t the expiration of

14   a term of imprisonment...imposed pursuant to Section 1170 or at the expiration of a term reduced

15   pursuant to Section 2931, if applicable, the inmate shall be released on parole for a period not

16   exceeding three years, unless the parole authority for good cause waives parole and discharges the

17   inmate from custody of the department."  Describing this language as a "mandatory 'kick-out'

18   provision," the California Supreme Court has stated, "The Board of Prison Terms has no discretion to

19   grant or withhold parole to a prisoner who has served a determinate term."  People v. Burgener, 41

20   Cal.3d 505, 529 n. 12 (1986), *disapproved on other grounds in* People v. Reyes, 19 Cal. 4th 743, 753

21   (1998).  Because of this mandatory language regarding granting parole for determinate sentences,

22   Petitioner has a liberty interest in whether prison officials properly execute those parole statutes.

23   Greenholtz, 442 U.S. at 11-12, 99 S.Ct. 2105-06.

24       Therefore, having concluded that a liberty interest is at stake, the next question is whether the

25   postponement in parole resulted in a violation of Petitioner's due process rights. The Court concludes

26   that it did not because CDC's decision to delay parole from March 18, 2000 for up to 150 days was

27   authorized by state law.  Section 3323 of title 15 of the California Code of Regulations covers the

28

1    procedure for forfeiture of credits resulting from a disciplinary proceeding, and provides in pertinent

2    part as follows:

3        (k) If an inmate is held beyond an established parole date because of a disciplinary or
         prosecution action, the number of days the inmate is overdue when released shall be deducted
4        from their parole period when one or more of the following apply:
         ...
5        (2) No credit is forfeited as a result of the disciplinary hearing.

6    15 Cal. Code of Regs. § 3323.

7        As mentioned, Petitioner was specifically informed about this eventuality at the time the prison

8    officials ordered the hearing.  In that notice, the prison expressly relied on § 3323.  Also, the prison

9    officials explained to Petitioner that the period of any delay would be subtracted from Petitioner's

10   period of parole should he be found innocent or should the hearing officer decide not to impose a

11   forfeiture of credits.  That is precisely what occurred here; thus, prison officials correctly followed

12   state law which authorized the delay in parole.[6]  Petitioner has never challenged § 3323 as being

13   unconstitutional either facially or as applied to his case.

14       Prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled

15   by those who have chosen to violate the criminal law and who have been lawfully incarcerated for

16   doing so."  Wolff, 418 U.S. at 561, 94 S.Ct. at 2978.  Such hearings "are not part of a criminal

17   prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."

18   Wolff, 418 U.S. at 556, 94 S.Ct. at 2975.

19       Hence, based on the foregoing discussion, Petitioner was given adequate due process.  See

20   Wolff, 418 U.S. at 563-567, 94 S.Ct. at 2978-80.  The Constitution does not require more.  Greenholtz,

21   442 U.S. at 16, 99 S.Ct. at 2108.  Because clearly established federal law did not mandate that prison

22   officials carry through with the original parole plans despite a pending CDC-115 hearing and a

23   pending prosecution, Petitioner was not deprived of due process.  See Wolff, 418 U.S. at 563-567, 94

24   S.Ct. at 2978-80.

25   ///

26   _____

27       [6]The associate warden appears to have been unaware of this provision when he expressed his opinion that
     Petitioner's parole date had been erroneously delayed.  However, Petitioner does not challenge the constitutionality of § 3323,
28   nor does he contest its applicability to him in this particular situation.

1    Petitioner then presented this claim to the Superior Court, to the 5th DCA, and to the California

2    Supreme Court, all of whom declined to adopt Petitioner's interpretation of the CDC's administrative

3    regulations.  See Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1966), cert. denied, 522 U.S. 881,

4    118 S.Ct. 208 (1997).  The Constitution only requires that prisoners be afforded those procedures

5    mandated by Wolff at a prison disciplinary hearing; it does not require that prison officials comply

6    with their own more generous procedures or time limitations.  See Walker v. Sumner, 14 F.3d at

7    1419-1420; Rogers v. Okin, 738 F.2d 1, 8 (1st Cir. 1984).

8    Because state officials followed state law and accorded Petitioner all the process he was due,

9    the state court's rejection of Ground One on its merits was not contrary to nor an unreasonable

10   application of clearly established federal law.

11   **B.  Ground Two: Ineffective Assistance of Trial Counsel**

12   Petitioner contends that his trial counsel provided ineffective assistance in failing to obtain the

13   services of an expert witness regarding whether .02 grams of heroin was a usable amount under

14   California law.  (Doc. 13, p. 7).  Petitioner also contends that trial counsel should have brought

15   motions to suppress evidence, for discovery, and to dismiss, as he had requested; Petitioner does not

16   explain on what legal and factual grounds his counsel should have brought these motions.  (Id.).

17   **1.  The Standard For Ineffective Assistance of Counsel**

18   In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court

19   must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064

20   (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

21   counsel's performance was deficient, requiring a showing that counsel made errors so serious that he

22   or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466

23   U.S. at 687, 104 S.Ct. 2064.  To establish this, the petitioner must show that counsel's representation

24   fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688, 104 S.Ct. at 2064-65.

25   The petitioner must identify counsel's alleged acts or omissions that were not the result of reasonable

26   professional judgment considering the circumstances.  Id.; United States v. Quintero-Barraza, 78 F.3d

27   1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court

28   indulges a strong presumption that counsel's conduct falls within the wide range of reasonable

17

1    professional assistance. <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. at 2064; <u>Sanders v. Ratelle</u>, 21 F.3d

2    1446, 1456 (9th Cir. 1994).

3         Second, petitioner must show prejudice. <u>Strickland</u>, 466 U.S. at 694. To establish prejudice,

4    petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

5    errors, the result of the proceeding would have been different. A reasonable probability is a probability

6    sufficient to undermine confidence in the outcome." <u>Id.</u>

7         The Court does not need to consider the two elements in any particular order, nor does the

8    Court need to consider both if the showing on either one is insufficient. <u>Strickland</u>, 466 U.S. at 697,

9    104 S.Ct. at 2069. A court need not determine whether counsel's performance was deficient before

10   examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. <u>Id.</u> The

11   object of an ineffectiveness claim is not to grade counsel's performance. <u>Id.</u> "If it is easier to dispose

12   of an ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so,

13   that course should be followed. Courts should strive to ensure that ineffectiveness claims not become

14   so burdensome to defense counsel that the entire criminal justice system suffers as a result." <u>Id.</u> With

15   these principles in mind, the Court now turns to an analysis of Petitioner's claims of ineffective

16   assistance of counsel.

17   **2.  Petitioner Was Not Denied Effective Assistance Of Counsel**

18        Preliminarily, the Court notes that Petitioner's claim of ineffective assistance of counsel is not

19   cognizable on federal habeas corpus review.  By entering a guilty plea, Petitioner waived the right to

20   a jury trial, the ability to confront his accusers, the power to compel the attendance of witnesses, and

21   generally to challenge the evidence that Petitioner committed the offense.  See <u>Boykin v. Alabama</u>,

22   395 U.S. 238, 242-43, 89 S.Ct. 1709, 1711-12 (1969). A valid guilty plea bars the federal court from

23   reviewing claims that relate to other constitutional rights. <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93

24   S.Ct. 1602, 1607-08 (1973); <u>Hudson v. Moran</u>, 760 F.2d 1027, 1029-30 (9th Cir. 1985).

25        A petitioner who has pleaded guilty may only contend that his guilty plea was not voluntary

26   and intelligent, <u>see</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985); <u>Boykin v. Alabama</u>,

27   395 U.S. at 242-43, 89 S.Ct. 1711-12, or contend that the advice he received from his counsel was

28   ineffective in violation of the Sixth Amendment. <u>See</u> <u>McMann v. Richardson</u>, 397 U.S. 759, 771, 90

1   S.Ct. 1441, 1449 (1970); Tollett, 411 U.S. at 267, 93 S.Ct. at 1607-08; Hudson, 760 F.2d at 1030.

2   As the Supreme Court has recognized,

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty
> of the offense with which he is charged, he may not thereafter raise independent claims
> relating to the deprivation of constitutional rights that occurred prior to the entry of the
> guilty plea. He may only attack the voluntary and intelligent character of the guilty plea
> by showing that the advice he received from counsel was not within the standards set
> forth in McMann.

Tollett v. Henderson, 411 U.S. at 267, 93 S.Ct. at 1608; McMann v. Richardson, 397 U.S. at 771, 90

S.Ct. at 1449 (holding that a defendant who pleads guilty on the advice of counsel may only attack

the voluntary and intelligent character of the guilty plea by showing that the advice he received from

counsel was not within the range of competence demanded of attorneys in criminal cases); see also

Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994).

Thus, only a petitioner's pre-plea claims that attack the voluntary and intelligent character of

his plea are cognizable.  And to the extent that a petitioner challenges his counsel's advice, he may

only present claims relating to the plea advice; claims relating to pre-plea advice are barred by

Tollett.  See Moran v. Godinez, 57 F.3d at 700.

Here, none of Petitioner's contentions regarding ineffective assistance of counsel implicate

the voluntary or intelligent nature of the plea nor do they question counsel's advice regarding that

plea.  Although Petitioner implies that counsel's purportedly deficient performance limited his ability

to defend himself against the charges, thus indirectly contributing to Petitioner's strategic decision to

plead guilty rather than go to trial as a "three strikes" candidate, such implications fall far short of

alleging that counsel's erroneous advice contributed to an involuntary and unknowing plea.

Nowhere in his petition does Petitioner claim that counsel's advice regarding pleading guilty was

erroneous.[7]  Nowhere in his petition does Petitioner claim that his counsel's deficient performance

affected the knowing and intelligent nature of his guilty plea.   Accordingly, Petitioner's ineffective

assistance claim need not be considered.

---

[7] Indeed, Petitioner faced a potential sentence of at least 25 years to life if convicted at trial.  In accepting a plea
agreement in which one prior "strike" was dismissed and a sentence of no more than eight years was imposed, Petitioner
avoided this fate.  Under such circumstances, it would be extremely difficult for Petitioner to establish that his counsel's
advice to accept the plea agreement was constitutionally deficient.

1    However, even assuming that such a claim were properly raised, Petitioner has established

2    neither ineffectiveness nor prejudice as required by <u>Strickland</u>.  First, Petitioner has failed to

3    establish that trial counsel's conduct in not obtaining an expert witness and not filing certain motions

4    was deficient.  In his Petition, Petitioner alleges that his trial counsel told him that he had attempted

5    to find an expert who would testify that .02 grams of heroin was not a usable amount, but had been

6    unsuccessful.  (Doc. 13, Brief, Ground Five, p. 1).  Petitioner concludes that his attorney's failure to

7    find a suitable expert witness was because counsel did not "put forth effort to seek one out," and that

8    counsel did not have Petitioner's best interests at heart.  (<u>Id</u>.).

9    Petitioner offers no support, by way of affidavits or other evidence, for such conclusions.

10    Petitioner provides no evidence as to the existence of any experts willing to offer such testimony.   If

11    no such witnesses existed, then obviously counsel's conduct cannot be deficient: an attorney cannot

12    be faulted for failing to do the impossible.  If, on the contrary, such witnesses did exist, Petitioner

13    has failed to establish their existence or to identify them.  In the absence of any evidence that there

14    actually were qualified experts prepared to offer testimony that .02 grams of heroin was not a usable

15    amount, the Court cannot conclude that counsel was deficient in not failing to produce them.[8]

16    Nor has Petitioner established that counsel's performance was deficient with respect to his

17    failure to file motions to dismiss, to suppress evidence, or for discovery.  Petitioner does not indicate

18    what the factual or legal bases of such motions would have been, or indeed whether any bases

19    existed at all for bringing such motions.  For example, Petitioner does not allege that the search

20    conducted by CDC personnel at Corcoran State Prison was illegal or that the prosecution intended to

21    introduce at trial admissions obtained without proper <u>Miranda</u> warnings. Other than his repeated

22    allegation that CDC officials had delayed the administrative proceedings, a matter entirely distinct

23    from the state criminal proceedings, Petitioner does not identify any grounds for an outright

24    dismissal of the charges.  Finally, Petitioner does not explain what discovery he sought or how such

25    _____

26    [8] Petitioner notes that without such an expert to testify, his defense was destined to be extremely weak and, as a three
strikes candidate, he would either have to go to trial or accept whatever offer the prosecutor devised.  (<u>Id</u>.). While it may

27    indeed be true that, without such an expert, the chances for a conviction were greater, this does not establish that counsel's
performance was deficient.

28

1    discovery, if obtained, might have benefitted his case.  Without such information, the Court can only

2    conjecture about what grounds *might* have been presented for these motions or whether such motions

3    would have been successful if so presented.  The Court declines to speculate.  In sum, Petitioner has

4    wholly failed to sustain his burden of showing deficient performance.

5         Second, Petitioner has failed to establish prejudice because he has made no showing how his

6    counsel's purported deficiencies  would have affected the voluntary or knowing nature of his plea.  A

7    habeas claim cannot prevail where the record clearly reflects that Petitioner's guilty plea was

8    knowingly, intelligently, and voluntarily made.  Neyland v. Blackburn, 785 F.2d 1283 (5th Cir.

9    1986); U.S. v. Todaro, 982 F.2d 1025 (6th Cir. 1993).   To satisfy the Constitution, a guilty plea

10   must be voluntary and intelligent. See Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985);

11   Boykin v. Alabama, 395 U.S. at 242, 89 S. Ct. at 1711-12.  In addition, a criminal defendant must be

12   advised of the constitutional protections he is giving up by pleading guilty, including the privilege

13   against self incrimination, the right to a jury trial, and the right to confront witnesses.  Boykin, 395

14   U.S. at 243, 89 S.Ct. at 1712.  If a petitioner challenges a guilty plea, the Court must determine

15   "whether the plea represents a voluntary and intelligent choice among the alternative courses of

16   action open to the defendant." Hill, 474 U.S. at 56, 106 S.Ct. at 369, quoting, North Carolina v.

17   Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164 (1970).

18        At the plea proceeding, Petitioner, represented by counsel, informed the trial court that he

19   was withdrawing his plea of not guilty and entering a guilty plea to the charge of possession of

20   heroin in prison and that he would admit one "strike" prior, with the express understanding that the

21   prosecutor would move to dismiss the remaining strike prior and that Petitioner would receive a

22   maximum sentence of eight years in prison. (CT 93-95).  Petitioner informed the trial court that no

23   one had made any threats or promises in order to induce him to plead guilty. (CT 95).  Petitioner was

24   informed of his rights to a speedy and trial by jury, to the processes of the court to subpoena

25   witnesses for the defense, his right to see, hear, and cross-examine witnesses, and to testify or to

26   remain silent and not incriminate himself.  (CT 95-97).  Petitioner indicated he understood each of

27   those rights, and was willing to give up those rights. (CT 95-98).

28   ///

21

Petitioner provided a factual basis for the plea when he admitted that, while confined at Corcoran State Prison, he had been discovered with a usable amount of heroin in his trousers. (CT 97).  Petitioner then pleaded guilty and admitted the prior strike conviction.  (CT 98-99).   Following the entry of Petitioner's guilty plea, the trial court expressly found that Petitioner's plea of guilty and his admission of the prior strike were "knowingly, intelligently, freely, and voluntarily made with a factual basis."  (CT 99).

Petitioner's admissions in open court negate his argument of ineffectiveness.  "Solemn declarations in open court carry a strong presumption of verity."  United States v. Moore, 599 F.2d 310, 314 (9th Cir. 1979), citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621 (1977); Chizen v. Hunter, 809 F.2d 560, 562 (9th Cir.1986) (same).  The foregoing chronology establishes that Petitioner's plea was knowing and voluntary; thus, any instances of deficient performance by trial counsel could not have had an effect on the outcome, i.e., on the entry of a knowing and voluntary plea of guilty.   Thus, Petitioner has failed to show prejudice under Strickland.

For all of the reasons set forth above, the Court concludes that the state court's decision rejecting Ground Two was not contrary to nor an unreasonable application of clearly established federal law.

## C.  Ground Three: The delay in prosecution

Petitioner contends that a 258-day delay between the original offense on May 10, 1999, and his arraignment in state court on January 24, 2000,[9] and a 195-day delay[10] between formal administrative notification of the offense on July 12, 1999 and his arraignment, violated Petitioner's due process and equal protection rights by making it "unlikely" that he "could prepare an adequate defense."  (Doc. 13).   Petitioner also contends that the delay violated the provisions of § 3316 of Title 15 of the California Code of Regulations, providing for notification of the offense within ten working days.  (Id.).  None of these contentions has merit.

///

---

[9]The Court has calculated this period at 259 days.

[10]The Court has calculated this period at 196 days.

To the extent that Petitioner is contending that the length of time between the offense or administrative notification and any subsequent state court proceeding violated the rules for CDC's own administrative process and California criminal procedure rules, the claim is not cognizable since it is premised entirely on a violation of state law.

The basic scope of habeas corpus is prescribed by statute. Subsection (c) of § 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution." 28 U.S.C. § 2254(a) states that the federal courts shall entertain a petition for writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." See also Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court.

The United States Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . ." Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833 (1973). Furthermore, in order to succeed in a petition pursuant to 28 U.S.C. § 2254, Petitioner must demonstrate that the adjudication of his claim in state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

The instant claim for relief is deficient because it fails to allege a violation of the United States Constitution or argue that Petitioner is in custody in violation of the Constitution. As held by the United States Supreme Court, "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. at 68, 112 S.Ct. at 480. Therefore, the fact that prison officials did not comply with their own administrative regulations regarding rule infraction hearings is not a basis for federal habeas relief. "[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239, 100 S. Ct. 2822, 2830 (1990), quoting Dugger v. Adams, 489 U.S. 401, 409, 109 S. Ct. 1211, 1216-17 (1989). Because Ground Three is premised entirely on state law, it is not cognizable on federal habeas and must be denied.

1    The Court recognizes that Ground Three in the amended petition does allege that the delays

2    referred to above violated Petitioner's right to due process and equal protection.  Petitioner cites no

3    authority, either federal cases or constitutional provisions,  for the proposition that the purported

4    violations of state procedural rules mentioned in Ground Three offend clearly established federal

5    law.  This is insufficient to plead a federal question in these habeas proceedings.

6        Merely placing a "due process" label on an alleged violation does not entitle Petitioner to

7    federal relief.  Langford v. Day, 110 F.3d at 1388-89.  Broad, conclusory allegations of

8    unconstitutionality are insufficient to state a cognizable claim.  Jones v. Gomez, 66 F.3d 199, 205

9    (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald assertions of

10   ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); see also

11   Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999), citing Gray v. Netherland, 518 U.S. 152,

12   162-63, 116 S.Ct. 2074 (1996) ("general appeals to broad constitutional principles, such as due

13   process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion").

14       A petitioner in federal court cannot merely characterize some state act as unconstitutional and

15   expect the court to explore all possible grounds under each article and amendment of the

16   Constitution.  While courts should liberally interpret pro se pleadings with leniency and

17   understanding, this should not place on the reviewing court the entire onus of creating a federal claim

18   for the petitioner.  Accordingly, without Petitioner having pleaded more specific violations of federal

19   law, the Court will not attempt to guess at the legal basis in federal law for Petitioner's allegations in

20   Ground Three.  The claim must be denied for failure to state a cognizable federal claim.

21       However, even assuming, arguendo, that Petitioner's references to "due process" and "equal

22   protection" are sufficient to properly plead a federal claim in the context of this habeas proceeding,

23   the claim must be denied on the merits.  First, Petitioner has established no actual violation of

24   California law with respect to his arraignment.  Petitioner concedes that the offense took place on

25   May 10, 1999.  (Doc. 13, Exhs. A, p. 1).  Petitioner likewise concedes that his arraignment in

26   Superior Court on the drug charge took place on January 28, 2000.  (Id.).

27       Notwithstanding Petitioner's allegations, the passage of 259 days between the offense and

28   arraignment is not inconsistent with California law.  As Respondent correctly points out, state law

24

provides for a three-year statute of limitations on bringing the charges for which Petitioner was

ultimately convicted.  Cal. Pen. Code § 801.   Penal Code § 801 provides, "Except as provided in

sections 799 and 800,[11] prosecutions for an offense punishable in the state prison shall be

commenced within three years after the commission of the offense."   Thus, prosecutors could have

brought charges against Petitioner at any time until May 10, 2002.  Here, prosecutors filed charges

on January 12, 2000.  (CT 3).   Hence, no violation of state law occurred with respect to the filing of

the charges.

Petitioner was arraigned in state court on January 28, 2000.[12]  (Doc. 13, Brief).   In California,

when an accusatory pleading is filed, the criminal defendant must be arraigned on it before the court

in which the pleading is filed.  Cal. Pen. Code, § 976(a).  Section 976 does not impose a specific

time limitation on the conduct of the arraignment; hence, delay that does not prejudice the defendant

is not a ground for attack on the judgment of conviction.  People v. Lollis, 177 Cal.App.2d 665, 671

(1960), *disapproved on other grounds in* People v. Perez, 62 Cal.2d 769, 776 (1965);[13] see People v.

Wilson, 60 Cal.2d 139, 154 (1963) (describing the prejudice requirement as "well settled");

People v. Ruiz, 196 Cal.App.2d 695, 703 (1962).

In addition to his generalized assertion that the delay made it "unlikely" that Petitioner could

prepare an adequate defense, Petitioner also argues that the delay allowed the prosecutor, who had

previously declined to prosecute the case, to determine that Petitioner was a three strikes candidate.

Thus, the delay gave the prosecutor time to "change his position" regarding prosecution, when,

Petitioner argues, the matter should have been resolved administratively rather than through the state

---

[11]Cal. Pen. Code § 799 provides that prosecution for an offense punishable by death, life imprisonment, or for embezzlement of public money may be commenced at any time.  § 800 provides that prosecutions for offenses punishable by eight years or more in prison shall be commenced within six years of the commission of the offense.

[12]Petitioner's amended petition recites that he was "brought forth to face accusers on 1-24-2000" (Doc. 13, p. 6). However, Exhibit B to his amended petition states that his arraignment was scheduled for January 28, 2000. (Doc. 13, Exh, B).

[13]California Rules of Court, Rule 4.110 does provide that an arraignment "shall be held on the date the information is filed or as soon thereafter as the court directs."  Here, the information was filed on February 15, 2000 (CT 5), and Petitioner was arraigned on that information the following day, February 16, 2000.  (CT 9).   In the Court's view, this complies with the requirements of Rule 4.110.

1  courts.

2      It is certainly understandable that Petitioner would have preferred that the matter be resolved

3  in an administrative proceeding in which prison officials, because of a failure to comply with state

4  time limits for administrative hearings, felt compelled to forego imposing any forfeiture of

5  Petitioner's credits despite a finding of "guilty."  However, Petitioner does not cite, and the Court is

6  unaware, of any state law that prohibits a prosecutor from changing his or her mind about

7  prosecuting an individual.  Nor does the Court perceive any impropriety under state law in the state

8  court conducting the arraignment of Petitioner sixteen days after the charges had been filed.

9  Accordingly, since there was no violation of state law on which to premise a due process or equal

10  protection claim, even if Petitioner had sufficiently pleaded a federal claim, it has not been

11  established under the facts in this case.  Thus, the state court's decision was not contrary to or a

12  violation of clearly established federal law.

13                                              **ORDER**

14      Accordingly, it is HEREBY ORDERED as follows:

15      1.  Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 13), is DENIED

16  on the merits.

17      2.  The Clerk of the Court is DIRECTED to ENTER JUDGMENT and close the file.

18      This order terminates the action in its entirety.

19

20  IT IS SO ORDERED.

21  **Dated:   September 28, 2005**                **/s/ Theresa A. Goldner**
    j6eb3d                                     UNITED STATES MAGISTRATE JUDGE
22

23

24

25

26

27

28

26